INFORMATION DIGNITY ALLIANCE
Megan Keenan
*Admitted Pro Hac Vice*
P.O. Box 8684
Portland, OR 97207
Phone: (925) 330-0359
Megan@InformationDignityAlliance.org

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN K. WHITE, <br><br> Plaintiff, <br><br> v. <br><br> DISTROKID LLC, KID DISTRO HOLDINGS, LLC D/B/A DISTROKID; EUNICE RIVERS aka Eunice Lloyd, <br><br> Defendants. | Case No. 22 Civ. 2205 (VEC) (GWG) <br><br> **FIRST-AMENDED COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff Brian K. White brings this action against Defendants DistroKid LLC, Kid Distro Holdings, LLC (collectively hereinafter "DistroKid") and against Defendant Eunice Rivers based upon personal knowledge, upon information and belief where applicable, and upon the investigation of counsel.

**I. NATURE OF THE CASE**

1. This is a case asserting copyright-infringement claims arising under 17 U.S.C. § 101, *et seq.*, as well as related state-law claims. It is brought in federal court because Congress vested federal courts with exclusive subject-matter jurisdiction over copyright-infringement claims. See 28 U.S.C. § 1338(a).

2.  At core, this case is about the unauthorized exploitation of Plaintiff Brian K. White's music by Ms. Rivers and about DistroKid's profiting from Ms. Rivers' infringements.

3.  Mr. White is a musician and Ms. Rivers is a singer and music and club promoter. Pursuant to the agreement, Mr. White had authorized Ms. Rivers to use some of his music so long as she split the revenues that resulted from the use of his music and so long as she provided Mr. White with opportunities to perform at live shows. Yet later, and despite her commitments, Ms. Rivers willfully failed to meet her obligations under this Agreement. And, despite knowing that she no longer had authorization to use Mr. White's music, Ms. Rivers willfully continued to use his music without authorization. Rather than respect Mr. White's requests that she cease unauthorized uses of his music, Ms. Rivers instead weaponized his disabilities in an attempt to disenfranchise his federal property rights, *i.e.*, his copyrights.

4.  For its part, DistroKid, upon receiving the unauthorized music from Ms. Rivers, copied the music, and distributed it across the Internet – to a variety of streaming platforms, online music stores, and other platforms. Despite the information that it had in its possession that would indicate that Ms. Rivers' actions were unlawful, DistroKid aided Ms. Rivers with her blatant copyright infringement. And, DistroKid profited off these acts. Both Ms. Rivers and DistroKid have infringed on Mr. White's copyrights.

## II. PARTIES TO THE CASE

5.  **Plaintiff.** Plaintiff Brian K. White is an individual domiciled in, and a citizen of, New Jersey.

6.  **Defendants.** DistroKid LLC is a Delaware limited-liability company with a principal place of business in the Southern District of New York. On information and belief, the same is true for Kid Distro Holdings LLC d/b/a DistroKid. On information and belief, Ms. Rivers is an individual domiciled in, and a citizen of, New Jersey.

### III. JURISDICTION & VENUE

7. **Subject-Matter Jurisdiction.** Mr. White's claims for copyright infringement arise under an Act of Congress relating to copyrights, *i.e.*, under 17 U.S.C. § 501. Therefore, this Court has exclusive subject-matter jurisdiction over these claims. See 28 U.S.C. §§ 1331 (federal-question jurisdiction), 1338 (a) (exclusive federal jurisdiction over copyrights). The state-law claims are so related to the copyright-infringement claims as to form part of the same case or controversy. Therefore, this Court has supplemental jurisdiction over the related state-law claims. See 28 U.S.C. § 1367(a).

8. **Personal Jurisdiction**.

    a. DistroKid is domiciled in the state of New York. Therefore, DistroKid is subject to the jurisdiction of a court of general jurisdiction in the State of New York. N.Y. C.L.P.R. § 301 (authorizing the exercise of "jurisdiction over persons, property, or status as might have been exercised" on or before Sept. 1, 1963); e.g., Rawstorne v. Maguire, 192 N.E. 294, 295 (N.Y. 1934) ("The courts of the State can obtain jurisdiction of the persons of those who are domiciled within the State[.]"). Upon service of summons or waiver thereof, this Court will have personal jurisdiction over DistroKid. See Fed. R. Civ. P. 4(k)(1)(A).

    b. Ms. Rivers has conducted business in the state of New York by contracting with DistroKid here. See "DistroKid Terms of Service," DistroKid (updated May 1, 2023); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985). In addition, Ms. Rivers has relevantly performed in New York and, on information and belief, regularly so performs. Therefore, Ms. Rivers is subject to the jurisdiction in the State of New York. N.Y. C.P.L.R. § 302(a)(1) (A "court may exercise personal

jurisdiction over any non-domiciliary […] who […] transacts any business within the state"). Upon service of summons or waiver thereof, this Court will have personal jurisdiction over Ms. Rivers. <u>See</u> Fed. R. Civ. P. 4(k)(1)(A).

9.  **Venue.** A substantial part of the events and omissions giving rise to the claims occurred in this District. Therefore, this District is a proper venue. <u>See</u> 28 U.S.C. §1391(b)(2). In the alternative, if there is no other district for which this action may be brought, this District is a proper venue because the Defendants are subject to this Court's personal jurisdiction with respect to the action. <u>See</u> 28 U.S.C. §1391(b)(3).

**IV. STATEMENT OF THE FACTS**

**A. Mr. White Is a Professional Musician Who Creates Beats for Himself and Licenses Beats to Other Artists.**

10. Mr. White is a professional musician. He writes music and beats; does live performances; mixes, produces, sound engineers recorded tracks; and also writes and directs his own music videos. Mr. White performs music under the stage name "Amir Beats." He also runs his own independent record label, Pype Dreams Entertainment, LLC.

11. Mr. White is especially known for his ability to create beats. In music, the term "beats" refers to the rhythmic underpinning and core music in many music genres, most commonly hip hop. Beats usually consist of a combination of synthetic instruments, synthetic sounds, drums, cymbals, keyboards, or other musical instruments.

12. Mr. White's original music is available on online streaming services like YouTube and Spotify. Several of Mr. White's most popular songs, like "[Mirror Mirror](#)" and "[i GOT DREAMS](#)," have each been viewed over 300,000 times on YouTube.

13. Mr. White has received comments across a number of his songs posted on YouTube praising

him for his music and, specifically, his beats:



14. On information and belief, Mr. White and Ms. Rivers met sometime in 2017.

15. Mr. White was encouraged by a friend to meet Ms. Rivers because of her reputation as a

promoter. She is known in the New Jersey area as an accomplished music and club promoter.

Mr. White was interested in meeting Ms. Rivers for that reason.

16. After meeting, Ms. Rivers took an interest in Mr. White, in part, because of his musical talents,

including his ability to write beats and his recording expertise at Pype Dreams Entertainment,

LLC.

17. Beyond being a music and club promoter, Ms. Rivers is also a musician herself. She's a self-

described singer, song writer, actress. She sings and writes lyrics and melodies.

18. Ms. Rivers has been invited to perform at live music shows. Ms. Rivers opens for other

performers at live performances and events in a variety of venues. She also performs at private

events like birthday parties.

19. Ms. Rivers performs songs she has written herself as well as songs written by others.

**B. Mr. White Creates the "Original Beats" and Enters into a Licensing Agreement with Ms. Rivers.**

20. While Mr. White primarily creates beats for his own music, he also creates beats and licenses them to other artists.

21. On or around November 2020, Mr. White created a series of beats for a number of songs to present for possible licensing to two artists in the New Jersey area that he had a working relationship with.

22. Alone and in his own recording studio, Mr. White created a series of beats using the music production software Reason 11. During the creation process and for each song in the series of beats, Mr. White set the beats per minute (*i.e.,* the tempo of the song), chose the rhythms, picked and arranged a combination of instrumentation (strings, drums, bass sounds, *etc.*), timed and tuned the pitches and musical-chord progressions, and added in a sequence of different background music and rhythmic underpinnings to create a series of expressive works (hereinafter the "Original Beats").

23. Mr. White did not copy any other work or expression when creating the Original Beats.

24. The Original Beats were not intended for use by either Defendant when they were created by Mr. White.

25. Mr. White registered the Original Beats, along with other songs, with the U.S. Copyright Office. They are registered with U.S. Copyright Office registration number **PAu004070068** with an effective registration date of January 5, 2021.

26. Mr. White did not end up reaching a licensing agreement with the specific artists he had in mind when creating the Original Beats.

27. After his talks with the other artists ended, Mr. White and Ms. Rivers discussed the possibility of Ms. Rivers licensing the Original Beats from Mr. White.

28. Sometime on or around December 2020 or January 2021, Mr. White and Ms. Rivers entered into an oral agreement.

29. This oral agreement (the "Agreement") had the following terms: Ms. Rivers could use the Original Beats as music for her singing (recorded and live), so long as she continued to book live performances for Mr. White to perform at and so long as she provided Mr. White with 50% of the proceeds of the exploitation of the Original Beats or any music that included the Original Beats. However, pursuant to the Agreement, if Ms. Rivers failed to continue to perform her payment and live-performance obligations, the license rights would automatically revert back to Mr. White and Ms. Rivers would no longer have the right to use the Original Beats.

30. The Agreement was governed by New Jersey law, as it was negotiated and agreed upon there.

31. Mr. White has entered into similar licensing agreements with other artists.

**C. Ms. Rivers Writes and Adapts Her Album's Melodies and Lyrics to Mr. White's Original Beats.**

32. On or around the time period between December 2020 and April 2021, Mr. White emailed and messaged Ms. Rivers electronic copies of the Original Beats.

33. Ms. Rivers listened to the Original Beats and decided which ones she wanted to use. Ms. Rivers, independently, alone, and without any contribution from Mr. White, wrote lyrics and melodies, or reused lyrics and melodies already written by Ms. Rivers years before, to perform with the Original Beats.

34. Mr. White did not help Ms. Rivers write or create her music and lyrics.

35. Ms. Rivers created an album titled "Here I Am" using Mr. White's Original Beats. The album was comprised of the following songs: *Unwanted Memories*; *Not Gonna Cry No More*; *Please! Please! Please!*; *Do You Have Some Time?*; *Here I Am*; *Counting Down to You*; *Highway Slide*; *Teach Me How to Pray*; and *He Tried It*. All of these tracks are collectively referred to as the "Album" herein.

36. The Album is a derivative work of Mr. White's Original Beats.

37. Mr. White reserved his right to control the Original Beats.

38. Ms. Rivers did not intend to control Mr. White's Original Beats.

39. Prior to sharing the recording of the Album, Ms. Rivers would reach out to Mr. White to get permission and authorization from him to share the Album.

40. For example, Ms. Rivers has asked for Mr. White's permission to share the Album with a radio station.

41. For another example, Ms. Rivers asked for Mr. White's permission to use and/or display the Album in a video.

42. On information and belief, Ms. Rivers did not intend to share any control over her lyrics and melodies with Mr. White. Ms. Rivers intended to be the sole author and owner of her melodies and lyrics.

43. Ms. Rivers did not intend to transfer any control of her music and melodies to Mr. White when creating the Album.

44. On information and belief, Ms. Rivers had written the melodies and lyrics to three songs – *Do You Have Some Time?*; *Counting Down For You*; *and Unwanted Memories* – in 1997.

45. Likewise, Ms. Rivers reserved the right to control her lyrics and melodies. For example, Ms. Rivers refused to allow Mr. White to produce her music and lyrics in a style called "chopped

and screwed." (In a "chopped and screwed" style, a creator slows down the music so that it sounds like the singing is done in slow motion; and then applies DJ techniques that alter the sounds of the song; with the result that a very different musical experience that is chopped into different parts and rearranged.)

46. Mr. White did not intend to co-create the work with Ms. Rivers. Mr. White only agreed, after he had created the Original Beats, to let Ms. Rivers create a derivative work of the Original Beats subject to the terms and conditions of the Agreement. Mr. White did not transfer any exclusive rights to the Original Beats to Ms. Rivers.

47. After Ms. Rivers created the Album, Mr. White posted the Album to DistroKid for Ms. Rivers.

**D. Ms. Rivers Ceased Fulfilling Her Obligations Under the Licensing Agreement.**

48. After creating the Album, Ms. Rivers obtained a single show for Mr. White. During the show, they performed music from the Album together.



49. After that single show, Ms. Rivers did not continue to meet her obligations under the Agreement to schedule live performances for Mr. White.

50. Ms. Rivers did not ask Mr. White to perform at these live performances. Further, Ms. Rivers expressly told Mr. White about the live performances she was doing while failing to meet her obligations under the Agreement.

51. On information and belief, Ms. Rivers performed songs from the Album at numerous live events in addition to the one live performance that Ms. Rivers performed alongside Mr. White. Ms. Rivers did not pay Mr. White his 50% of the proceeds from any of these live performances.

52. Further, Ms. Rivers registered with the Album with Sound Exchange and registered a 100% claim in the Album. Ms. Rivers did not add Mr. White's name to the Sound Exchange registration.

53. Therefore, when the Album accrues royalties under Sound Exchange, Ms. Rivers collected 100% of the royalties for herself.

54. On information and belief, Ms. Rivers exploited the Album in additional ways and did not pay Mr. White 50% of those additional exploitations.

55. Ms. Rivers was both aware of her obligations under the licensing Agreement and was able to meet those obligations had she chosen to do so. Thus, her failure to meet them was intentional and willful.

56. Due to Ms. Rivers' continued failure to meet her obligations under the Agreement, the rights in the Original Beats and any derivative thereof, reverted back to Mr. White by operation of the Agreement.

57. Nonetheless, on September 9, 2021, Ms. Rivers registered the Album with the copyright office, registration number PA0002326762. Ms. Rivers did not reference Mr. White's copyright

registration of the Original Beats. Ms. Rivers did reference previous copyright registrations of her own.

58. On or around December 7, 2021, Mr. White reiterated to Ms. Rivers that she no longer had his authorization under the license Agreement to use his Original Beats.

59. On or around December 7, 2021, Mr. White removed the Album from DistroKid.

60. On or around December 7, 2021, Mr. White informed Ms. Rivers that she must cease any uses of his Original Beats, including any use in the Album.

**E.  Ms. Rivers Makes Unauthorized Uses of Mr. White's Copyright Works.**

61. Despite the revocation, Ms. Rivers continued to use Mr. White's Original Beats.

62. Despite the revocation, Ms. Rivers continued to use Mr. White's Original Beats for a significant time period.

63. On information and belief, Ms. Rivers continued to make copies of the Original Beats in the Album after Mr. White revoked his authorization to use the Original Beats.

64. On information and belief, Ms. Rivers continued to publicly perform the Original Beats in the Album after Mr. White revoked his authorization to use the Original Beats.

65. On information and belief, Ms. Rivers continued to distribute the Original Beats in the Album after Mr. White revoked his authorization to use the Original Beats.

66. On information and belief, sometime between December 7, 2021, and March 10, 2022, Ms. Rivers uploaded the infringing copies of the Album to DistroKid using her own DistroKid account.

67. Mr. White did not know that Ms. Rivers had re-uploaded the Album to DistroKid until on or around March 10, 2022.

68. On or around March 10, 2022, Mr. White sent an email to Ms. Rivers requesting that she remove the infringing content from DistroKid and ultimately the Digital Stores.

**F. DistroKid Profits Off of its Unauthorized Uses of Mr. White's Copyright Works.**

69. DistroKid is a music distributor, *i.e.*, a company that, for a fee, populates a musician's music to a variety of streaming services, online music stores, and other platforms (*e.g.*, Spotify, iTunes, Amazon, TikTok, YouTube Music).

70. DistroKid has created a network of specific streaming services, online music stores, and other platforms that it has decided to contract with (the "Digital Stores"). These Digital Stores include major stores and services like Spotify, iTunes, Amazon, TikTok, YouTube Music, *etc.* DistroKid has an agreement with each Digital Store. And, if DistroKid's agreement with a Digital Store terminates, then the artist's music will be removed from that Digital Store promptly.

71. DistroKid charges an annual fee in exchange for use of its distribution platform. DistroKid offers users upcharges upon each upload of music to Digital Stores.

72. On information and belief, DistroKid does not have any internal process for investigating copyright infringement on newly posted content.

73. An artist can upload music to DistroKid as follows:

   a. An artist creates an account and pays an annual fee;

   b. An artist uploads a copy of his song or album to DistroKid's website and chooses which Digital Stores it wants DistroKid to populate with his music;

   c. DistroKid, depending upon the requirements of the Digital Store, will modify the copy to conform with each Digital Store's uploading requirements;

   d. DistroKid will upload the modified copy to the selected Digital Stores; and

      e.  DistroKid tracks and collects royalties from the Digital Stores and distributes them into the artist's DistroKid account.

74. DistroKid may remove an artist's music from Digital Stores for reasons including failure to pay its annual fee, its receipt of takedown notices submitted to Digital Stores, or any reason in its business judgment.

75. On or around February 2021, Ms. Rivers posted unauthorized copies of Mr. White's Original Beats, as contained in the Album, to DistroKid. At the time of her posting to DistroKid, Ms. Rivers did not have Mr. White's consent or any contractual authorization to use his Original Beats.

76. On information and belief, once Ms. Rivers uploaded the Album to DistroKid, handing a copy to DistroKid, DistroKid made and stored a complete copy of the Album on its servers.

77.  On information and belief, DistroKid then took the unauthorized copy of the Album and made additional unauthorized copies from the copy posted by Ms. Rivers.

78. Then, and also without authorization, DistroKid changed the format of at least one copy.

79.  Without authorization, DistroKid then distributed the Album to various Digital Stores, all of which are sent to those stores for the purposes of commercial exploitation and have been specifically identified and chosen by DistroKid for the express purpose of publicly and commercially distributed and performing copyrighted music.

80. On information and belief, DistroKid is aware of precisely how these streaming services and royalty platforms were commercially exploiting Mr. White's Original Beats because DistroKid deploys tracking technology and/or receives reports from those services pursuant to agreements and established relationships.

81. DistroKid has metrics and precise knowledge about what works are commercially exploited and how frequently those works are exploited.

82. Moreover, DistroKid could cease the commercial exploitation of musical works it has distributed.  It retains the contractual authority with the Digital Stores to get materials removed – even without the authority of the party that originally posted it.

83. Even without Ms. Rivers' consent, DistroKid could have refused to make unauthorized copies or to make unauthorized distributions.  Moreover, DistroKid could have refused to post the materials via its contractual authority.

84. DistroKid would not receive monetary payments from its users but-for this act of distributing the musical materials to designated platforms—platforms chosen and contracted for by DistroKid—for broad and widespread commercial exploitation.

85. DistroKid unlawfully reproduced, displayed, and distributed the Original Beats without Mr. White's authorization by copying Ms. Rivers' upload of her Album, re-formatting at least one copy, and re-posting the copies of the Album to various Digital Stores, which then proceeded to infringe on a wider scale.

## V. CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>
<u>DIRECT COPYRIGHT INFRINGEMENT BY EUNICE RIVERS</u>

86. Plaintiff Brian K. White hereby reasserts and realleges all paragraphs alleged above.

87. **Ownership of a Valid Copyright.** Mr. White is the author of the Original Beats. Mr. White has not transferred ownership rights in the Original Beats.

88. **Copying of an Unlawful Amount.** Ms. Rivers, without authorization, reproduced, publicly performed, and publicly distributed the Original Beats.

## SECOND CAUSE OF ACTION
### AN ACCOUNTING FROM EUNICE RIVERS

89. Plaintiff Brian K. White hereby reasserts and realleges all paragraphs alleged above.

90. Mr. White requires an accounting for the revenues accruing from all of the uses Ms. Rivers made, including public and private performances, of the Album.

91. Ms. Rivers owes this amount of 50% of revenues made using the Original Beats or derivative thereof pursuant to her agreement and, in the alternative, owes this amount pursuant to the operation of law.

## THIRD CAUSE OF ACTION
### BREACH OF CONTRACT BY EUNICE RIVERS

92. Plaintiff Brian K. White hereby reasserts and realleges all paragraphs alleged above.

93. Mr. White and Ms. Rivers formed a legally binding agreement under New Jersey law with the terms described above.

94. Mr. White performed his portion of the Agreement by providing his preexisting Original Beats and by granting non-exclusive rights to Ms. Rivers in the Original Beats and authorized her to make a derivative work so long as she met the conditions of the Agreement.

95. Ms. Rivers did not continue to perform her obligations to provide 50% revenues from all uses of the song and did not continue to perform her obligations to provide live-show opportunities for Mr. White, constituting substantial breach.

96. Mr. White suffered damages in the loss of revenues, the loss of expectancy of live performances, in an amount to be proven at trial.

FOURTH CAUSE OF ACTION
DIRECT COPYRIGHT INFRINGEMENT BY DISTROKID

97. Plaintiff Brian K. White hereby reasserts and realleges all paragraphs alleged above.

98. **Ownership of a Valid Copyright.** Mr. White is the author of the Original Beats. Mr. White has not transferred ownership rights in the Original Beats.

99. **Copying of an Unlawful Amount.** The Album contained exact copies of the Original Beats. Further, the Album was a derivative work of the Original Beats. DistroKid made additional copies that it distributed across the Internet to Digital Stores, such as Spotify, Apple Music, *etc.*, without authorization.

FIFTH CAUSE OF ACTION
INDIRECT COPYRIGHT INFRINGEMENT BY DISTROKID

100.    Plaintiff Brian K. White hereby reasserts and realleges all paragraphs alleged above.

101.    **Ownership of a Valid Copyright.** Mr. White is the author of the Original Beats. Mr. White has not transferred ownership rights in the Original Beats.

102.    **Copying of an Unlawful Amount.** The Digital Stores to which DistroKid made authorized distribution of the Original Beats or derivatives thereof to the Digital Stores like Spotify, *etc.*, that in turn publicly performed, publicly distributed, and reproduced these Original Beats or derivatives thereof without authorization.

103.    **Contribution & Knowledge.** DistroKid knew of and tracked these usages (which were direct infringements). It received regular updates on these usages. DistroKid contributed to these usages in many ways, including by distributing the copyrighted works to the Digital Stores and services.

104.    **Profit & Control.** DistroKid had control over the exploitation through its platform of musical works it has distributed, on information and belief, both via contract and the

- 16 -

underlying technology.  DistroKid profits from infringing activities such as this, which are a but-for cause of the infringement.

## VI. PRAYER FOR RELIEF

105.   WHEREFORE, Mr. White prays for judgement in his favor and against both Ms. Rivers and DistroKid, seeking any and all relief permitted, including:

I.      Money Damages, Costs, and Fees: That the Court, if permitted,

    a.   Award Mr. White damages against DistroKid and Ms. Rivers.

    b.   Award Mr. White full recovery of costs as against DistroKid and Ms. Rivers.

    c.   Award Mr. White reasonable attorneys' fees as against DistroKid and Ms. Rivers.

II.     Injunctive Relief: That the Court, if permitted,

    a.   Enjoin further infringement by Defendants.

    b.   Impound and transfer the infringing copies to Mr. White's possession or destroy them.

## VII. DEMAND FOR TRIAL BY JURY

106.   Plaintiff Brian K. White hereby demands a trial by jury of all issues so triable. See Fed. R. Civ. P. 39: U.S. Const. amend. VII.

Dated: September 22, 2023                    Respectfully submitted,

                                         /s/ *Megan Keenan*
                                        Megan Keenan
                                        Oregon State Bar No. 204657
                                        P.O. Box 8684
                                        Portland, OR 97207
                                        Phone: (925) 330-0359
                                        Megan@InformationDignityAlliance.org

                                        *Attorney for Plaintiff*